# Wesley *v*. The State.

### *Indictment for Murder.*

1. *Record; conclusiveness of recitals of.* — The recital in the record that "defendant, in open court, acknowledges service of a copy of the indictment and list of jurors, one entire day before the day set for trial," &c., concludes him from disputing such service, and dispenses with all further inquiry, or other recital as to it, even if such service was required to appear affirmatively of record, to uphold the conviction.

2. *Indictment; presentation of, and filing in court, how shown.* — An indictment indorsed "a true bill," and signed by the foreman, and also indorsed and signed by the clerk "filed in open court by the foreman of the grand jury, in the presence of fourteen other members of the grand jury," on a named day of the term at which the indictment was found, cannot be abated on plea that it was not presented to, and filed in court, in the manner prescribed by law. Such an indictment shows a literal compliance with the statute.

3. *Res gestœ; admissibility of declarations of deceased identifying prisoner, as part of res gestœ.* — The defendant, named Jake Wesley, being on trial for murder, it is competent to prove, as part of the *res gestœ*, that deceased, having been aroused before day by a noise at his chicken house, and going out to see what occasioned it, was shortly afterwards heard to exclaim, "Jake, what are you doing here?" when it appears that, on returning in a short time and dressing himself, deceased again went out and was absent five or six minutes, during which time witness heard the reports of two shots, and saw deceased return wounded.

4. *Venue; failure to prove, must be excepted to.* — In the absence of any exception whatever in the court below, a conviction will not be reversed, on appeal, for the mere failure of the record to show proof of venue.

5. *Witness; examination of; discretion of judge as to, must be unwisely exercised, to work reversal.* — The time, manner, and length, to which the examination of witnesses can be protracted, rests very greatly in the discretion of the presiding judge; and a party complaining of a ruling terminating the repeated plying of witnesses with the same questions, to which the same answers had been made, must show that the discretion has been unwisely exercised.

[Wesley v. State.]

APPEAL from the City Court of Montgomery.

Heard before Hon. JOHN A. Minnis.

The defendant, Jake Wesley, was indicted for the murder of Ben. Jarratt. It does not appear in the bill of exceptions that the defendant was served with a copy of the indictment, together with a list of all the jurors summoned in the cause, but the judgment entry recites that defendant acknowledged the delivery thereof to him one entire day before the trial. Defendant pleaded in abatement to the indictment, that it had not been presented to, and filed in court as required by the statute. The indictment contained the indorsements mentioned in the opinion of the court, and, on demurrer, the plea was held bad by the court below. Thereupon issue was joined on the plea of not guilty.

In drawing the jury, the name of Alex. *Jones* was drawn; the defendant objected that no such name was on the list furnished him, and that the name on his list, corresponding with the number of the name drawn, was Alex. *James*. The court ordered that name to be laid aside, and directed a new juror to be summoned instead. After the name of the new juror (Samuel Westcott) had been placed in the box, he applied to the court to be excused, but the court declined to hear his excuse until his name was drawn, and defendant excepted thereto; when said Westcott's name was drawn, he was challenged for cause.

Another juror (Brassell) was drawn, and peremptorily challenged by defendant, but before the next juror was drawn, defendant announced that the name of *Brassell* was not on the list served on him; that the name on his list, corresponding with the number drawn, was "*Bassell*." "The court asked the defendant and his counsel what they requested? They refused to make any request, or indicate any course, but stated they would take notice of any irregularities, and except." The court thereupon directed that the defendant should not be charged with this challenge.

The name of S. A. *Dreher* was also drawn, and he was challenged for cause; the defendant announced that he had no such name on his list, but that, instead, he had the name of "*Drehler*." No other juror was summoned in his place, and defendant excepted.

When the panel of fifty jurors, including the regular panel for the week, was exhausted, eleven jurors had been accepted; thirteen peremptorily challenged by the defendant, eight by the State, and the remainder were challenged for cause. Two more jurors were then summoned and drawn; one of these was challenged for cause and the other was accepted.

During the trial the wife of the deceased testified that on

[Wesley *v.* State.]

the Thursday night before the death of deceased, she was awakened by her husband's jumping out of bed and exclaiming that some one was after the chickens ; that he ran out of the door towards the chicken house, and she heard him exclaim when out there, " Jake, what are you doing here ? " but she heard no reply.   To that portion of the testimony defendant objected, but the court overruled the objection and admitted it to the jury, and defendant excepted.   The witness further testified that deceased then returned to the house, dressed himself, and went out again.   After he had been out about five or six minutes, she heard two reports of a gun, away from the chicken house, and soon thereafter deceased returned to the house wounded.

The record nowhere shows that the venue was proved, or that any objection was taken by the defendant, or that the question was in any way raised in the court below.

The counsel for defendant, on cross examination of a witness, having repeatedly asked him as to his having seen defendant near the house of deceased on the evening before the night deceased was shot, the court interrupted him by using the following language : " The witness has answered several times that he saw defendant near Ben's (deceased's) house on the Thursday afternoon before the shooting, and I think that is sufficient on this point ; " at the same time saying that if counsel of defendant was not satisfied he might proceed.   Defendant excepted to the language used by the court, as tending to influence the jury against him.   Afterwards, when the counsel for defendant was repeatedly asking and pressing a question upon another witness, the court said : " How can the witness answer the question differently from what he has done ? " and no further answer was made by the witness, and defendant excepted to this language used by the court.

There was other testimony in the cause, but not bearing on the points decided here.   The defendant was convicted and sentenced to ten years' imprisonment in the penitentiary.   He appealed and assigned as error : 1st.  The failure of the State to *prove* that defendant was served with a copy of the indictment and a list of the jurors one entire day before the trial ; 2d. Sustaining the demurrer to defendant's plea in abatement ; 3d. The action of the court in empanelling the jury ; 4th. Admitting testimony of deceased's declaration, " Jake, what are you doing here ? " 5th. The language used by the court in reference to defendant's cross-examination of the witnesses, and, 6th. The failure to prove venue in the case.

JNO. GINDRAT WINTER, for appellant. — The record fails to show that a copy of the indictment and a list of the jurors,

[Wesley v. State.]

were served on the prisoner one entire day before the trial. Rev. Code, § 4171; *Morgan* v. *The State*, 48 Ala. 65.

The acknowledgment of the prisoner of delivery to him of a copy of the indictment and a list of the jurors in his case is not sufficient; it should be *proved*. The demurrer should have been overruled; nothing in the record shows that the indict-ment was presented as required by § 4148 of Rev. Code. In 35 Ala. 421, it is held that an indictment indorsed "A true bill," signed by the foreman, and indorsed "filed," and signed by the clerk, is sufficient, *primâ facie;* but we think that the authorities cited in that case, holding a contrary view, are more consistent with reason.

Generally, hearsay evidence is inadmissible. Roscoe Crim. Ev. 22. The exclamation by deceased, "Jake, what are you doing here?" as testified to, is not embraced in any of the ex-ceptions to the general rule. *McAdams* v. *Beard*, 34 Ala. 478. "The acts of another, in the absence of the defendant, are, *primâ facie*, inadmissible against defendant." *Hall* v. *The State*, in MS., June term, 1874. There was no evidence that defendant was at the chicken house, and therefore no predicate was laid to admit the exclamation of deceased, as coming within that class of hearsay declarations which would, under the circumstances, naturally call forth a reply; and yet, this evidence was admitted for the purpose of showing the presence of the accused. Nor was the declaration admissible as a part of the *res gestæ*; the shooting occurred several minutes after-wards, at a different place, and after deceased had returned to his room, dressed himself, and had gone out again. It was cer-tainly too remote and disconnected. Under the circumstances, it being at night, and doubtless made under excitement, the exclamation was but the expression of an opinion, or, perhaps, a bare suspicion. "The exclamation of the deceased, made antecedent to the stroke, cannot be received." *State* v. *Ridgely*, 2 Har. & McHen. 120; *Gray* v. *Goodrich*, 7 Johns. 95. And in the case of *Joe Johnston* v. *The State* (47 Ala. 9), the declarations of the deceased, while lying on the ground, and immediately after he was shot, were admitted solely as dying declarations.

Proof of venue being a jurisdictional fact, the record must affirmatively show that some *evidence* was introduced, at least tending to show the venue, where the bill of exceptions (as in this case) purports to set out all the evidence in the case. *Frank* v. *The State*, 40 Ala. 9; *Ewell* v. *The State*, 6 Yerg. 364.

The remarks of the court in relation to the examination of the witnesses were improper; they interfered with the right to a full cross-examination, and tended to bias the minds of the jury. *Stephens* v. *The State*, 47 Ala. 696; *Sims* v. *The State*, 43 Ala. 33; *Hare* v. *Little*, 28 Ala. 236.

JOHN W. A. SANFORD, Attorney General, *contra.* — The indictment was regularly presented and filed. Rev. Code, § 4148 ; *Mose* v. *The State,* 35 Ala. 421.

The objections raised in empanelling the jury are of no avail to defendant ; admitting that the court erred, the errors were waived by the conduct of the defendant. *Ex parte Hall,* 47 Ala. 675.

The question of the deceased, " Jake, what are you doing here ? " is a part of the *res gestæ,* and defendant's objection was properly overruled.

As to the conduct of the court, in the examination of the witnesses, see *Lyman* v. *The State,* 45 Ala. 78 ; *Grady* v. *The State,* 11 Ga. 253.

If the court erred in failing to require the venue to be proved, the defendant is not in a condition to assign the error here, because he did not except to it in the court below. See *Frank* v. *The State,* 40 Ala. 1.

BRICKELL, C. J. — The appellant was indicted for murder. The record discloses that he acknowledged in open court that a copy of the indictment, and a list of the jurors summoned for his trial, had been duly served on him one entire day before the day appointed for trial. This acknowledgment it is now insisted is not sufficient evidence of the fact of such service; that it should be made to appear from other evidence. If it could be conceded essential to the validity of a conviction for felony, which may be punished capitally, that it should appear affirmatively from the record, that a copy of the indictment and a list of the jurors had been served on the defendant, one entire day before his trial, we are at a loss to conceive any higher evidence of this fact than the admission of it in open court by the defendant. Such an admission dispensed with all inquiry into the fact, and is as against the defendant conclusive evidence of it.

The appellant pleaded in abatement to the indictment, that it had not been presented to and filed in the court as required by the statute. The indictment was indorsed " a true bill," and the indorsement signed by the foreman of the grand jury. It was also indorsed " Filed in open court, by the foreman of the grand jury, in presence of fourteen other members of the grand jury this the 17th day of April, A. D. 1874," and the indorsement is signed by the clerk. This is a literal compliance with the statute. R. C. § 4148. The only evidence of the authenticity of an indictment which is required under our law is the indorsement of the foreman of the grand jury. The indorsement the clerk is required to make may be made at any time, while the cause is *in fieri. Clarkson* v. *State,* 3

Ala. 378; *Mose* v. *State*, 35 Ala. 421. Independent of this consideration, the plea in abatement was an admission of the genuineness of the indictment. The plea could not be interposed except to a genuine indictment. A spurious paper, attempted to be foisted on the court, is not met by a plea, but by a motion to strike from the files, or other appropriate motion, on the hearing of which evidence as to its character may be received. *Clarkson* v. *State, supra.* There was no error in sustaining the demurrer to the plea in abatement.

In the empanelling of the jury, no errors prejudicial to the appellant were committed. Acts or declarations of persons not parties, or of one party in the absence of another, are often received in evidence as parts of the *res gestæ.* It is perhaps impossible to lay down a general rule as to the acts or declarations which will be received as forming parts of the *res gestæ.* Each case is dependent in a great degree on its peculiar facts and circumstances. Such acts or declarations as are thus received, must have been done or made at the time of the occurrence of the main fact, must have a tendency to elucidate it, and must so harmonize with it as obviously to constitute one transaction. It is not essential that they should be precisely concurrent in point of time with the main fact; if they spring out of the transaction; if they elucidate it; if they are voluntary and spontaneous, and if they are made at a time so near to it, as reasonably to preclude the idea of deliberate design, they are regarded as contemporaneous with the main fact. Starkie on Ev. 86 (Sharswood's ed.); *Gandy* v. *Humphries,* 35 Ala. 621; 1 Green. Ev. § 108. The cry of the mob accompanying Lord George Gordon was received in evidence as part of the *res gestæ,* and showing the character of the principal fact, alleged to be an overt act of treason. The exclamation of the deceased, " Jake, what are you doing here ? " was coincident in point of time with the main fact, — the violence producing his death. From the moment he was aroused from sleep by the noise on his premises until he was shot, all the facts in evidence were but parts of a continuous transaction. The exclamation, sprung from the very character of the facts — was natural, voluntary, and spontaneous, and was not the result of design. Tested by the strictest, narrowest rules applied, in determining when an act or declaration can be received as forming part of the *res gestæ,* this exclamation has all the elements of admissibility.

There are numerous decisions of this court, affirming that a charge to the jury authorizing a conviction, without proof of the venue, is erroneous. So if no exception is reserved to the charges which may have been given, or no charge is requested asserting that a want of evidence of venue is fatal to a convic-

tion, but an exception is reserved to the conviction and sentence. These decisions will be followed as correct expositions of the law. They will not be extended to the reversal of a judgment of conviction, in the absence of all exception in the primary court, because of a failure to make proof of venue. No exception being reserved, the accused must be deemed to have waived evidence of venue. So far as the jurisdiction of the court is dependent on the venue, the original statement in the indictment, "State of Alabama, Montgomery county," is equivalent to an averment that the offence was committed within the body of that county, and authorizing evidence that such was the fact. *Noles* v. *State*, 24 Ala. 672.

The time, manner, and the length to which the examination of witnesses can be protracted, "lies chiefly in the discretion of the judge before whom the cause is tried, it being from its very nature susceptible of but few positive and stringent rules." 1 Green. Ev. § 431; *Gayle* v. *Bishop*, 14 Ala. 552; *Ashley* v. *Hopper*, 15 Ala. 457. We cannot discover that the judge of the city court did not wisely exercise this discretion in terminating the repeated plying of the witnesses with the same questions to which the same answers had been made.

There is no error in the record, and the judgment is affirmed.